# EXHIBIT N0. 1

# ALABAMA PUBLIC SERVICE COMMISSION



# 2008

### Annual Report for Fiscal Year 2008



PLAINTIFF'S EXHIBIT

1-1

# Commissioners



**JAN COOK** is a native of Dozier, Alabama where she served on the City Council. She is a graduate of Auburn University with a degree in Political Science. She has also done graduate work at both AUM and Troy State University. In 1982 she sought her first statewide office and won the office of State Auditor with more votes than any other candidate seeking office. She was re-elected as State Auditor in 1986. In 1990 she was elected to the Alabama Public Service Commission. She was re-elected to the Alabama Public Service Commission in 1994, 1998, 2002 and 2006.

Commissioner Cook has always been a consumer-minded Commissioner and has sponsored several initiatives, including antislamming and cramming legislation and statewide Y2K information forums. She has also been involved in issues ranging from helping Alabama agriculture compete in a global market to her concerns for railroad safety. In addition, Commissioner Cook developed several programs to help Alabama farmers through the 2000 and 2007 droughts. The Alabama Farmers Federation honored Commissioner Cook with its Service to Agriculture award in 2008.

*Commissioner Cook's Staff:*

*Kelly Mulero,*
*Executive Secretary*

*Karen Rogers,*
*Administrative Support*
*Assistant III*

*Tamika Reed,*
*Executive Assistant*

*Virginia Hill,*
*Administrative Support*
*Assistant I*



PLAINTIFF'S
EXHIBIT
1-2

## Energy Division





The Energy Division oversees the operations of all investor-owned electric, natural gas and water utilities serving consumers within the state of Alabama. This responsibility includes monitoring the rate stabilization and equalization programs used by the Alabama Public Service Commission ("the Commission") to regulate Alabama Power



Company, Alabama Gas Corporation and Mobile Gas Service Corporation. The safety of all natural gas and hazardous liquid pipeline systems in Alabama is included within the Energy Division's scope of responsibility under the Gas Pipeline Safety section's purview. Additionally, the Special Projects section addresses and coordinates issues that are non-jurisdictional or concern multiple energy commodities.

The subsequent paragraphs discuss each section's significant regulatory policies, responsibilities and major activities that occurred during fiscal year 2008.

### Electricity Section

The Electricity Section is primarily responsible for the regulatory oversight of Alabama Power Company ("the Company" or "APCo"). This includes financial analyses, economic evaluations, auditing, and statistical data assimilation. In addition, the staff performs management inquiries to remain informed as to the manner and method in which APCo's business is conducted.

This section also evaluates certain aspects of Southern Electric Generating Company (SEGCo), jointly owned by Alabama Power Company and Georgia Power Company, and the Alabama Municipal Electric Authority (AMEA).

## ALABAMA POWER COMPANY

### Rate Stabilization and Equalization (RSE)

RSE was designed to lessen the impact, frequency and size of retail rate increase requests by permitting the Company, through the operation of a rate that was filed and approved, to adjust its charges more readily to achieve the rate of return allowed by the rate order of the Commission. By provisions in the rate, the charges are increased if projections for the upcoming year show that the designated rate of return range will not be met and are decreased if such projections show that the designated rate of return range will be exceeded. Other provisions limit the impact of any one adjustment (as well as the impact of any consecutive increases), and also test whether actual results exceeded the equity return range.

Beginning December 1, 2006, and by December 1 of each year thereafter, the Company's rate of return on projected average common equity ("RRCE"), separated to retail electric service, shall be computed annually for the upcoming twelve-month period ending December 31 (such twelve-month period being the "rate year"). The RRCE shall be computed on the basis of cost estimates and budgets prepared by the Company in the ordinary course of its business and in a manner consistent with the Uniform System of Accounts. If the resulting RRCE is less than 13.0% or more than 14.5% (13.0% – 14.5% being "the equity return range"), then monthly bills under the respective rate schedules subject to Rate RSE shall be increased or decreased by amounts per kilowatt-hour (kWh) necessary, in total, to restore the RRCE to 13.75% (the "adjusting point" in the equity return range).

The Electricity Section examines the Company's books and records on a monthly basis to determine the RRCE for the current 12 month period. It also actualizes the December forecast using the most recent accounting data. The section's staff prepares a summary report of this information and presents it at each monthly Commission [...] 31, 2008, the re-projected Retail Retu[...] Equity for the twelve-month period [...] was 13.55%.

### Energy Cost Recovery (ECR)

Rate ECR is the rate approved by the Commission to recover retail customers' portion of energy cost. Initially established at 17.88 mills per kWh, the rate has been adjust-

 PLAINTIFF'S EXHIBIT

1-3

# Commission Staff

## Administrative Division

Walter L. Thomas, Jr.,
Commission Secretary

Sandy Haynes,
Clerk Stenographer III

Felisa Webster,
Administrative Support Assistant III

Tashenma Lawrence,
Administrative Support Assistant II

### Finance Section

Miles Gagner,
Senior Accountant
Kimberly Holt,
Senior Accountant
Ernestine Huffman,
Accountant
Anthony Jackson,
Account Clerk

### Motor Carrier Records Section

Valerie Hogan,
Administrative Support Assistant III

Leveika Martin,
Administrative Support Assistant II

## Advisory Division

Judy McLean,
Director, CPA
Ellen Irvine,
Administrative Support Assistant III
Jodie Byrd,
Administrative Support Assistant I

### Analysts

Tom Samford,
PSC Attorney
Gene Pitts,
PSC CPA
Rolland Casey,
PSC Accountant
David House,
Public Utility Analyst III
Clarence Duncan,
PSC Rate Analyst

### Consumer Services Section

Aquilla Spivey,
Consumer Services Manager
Sue Hicks,
Consumer Services Specialist
Wanda Lowery-Geiger,
Consumer Services Specialist
Stephanie Sweet,
Consumer Services Specialist
Liz Thompson,
Clerk Stenographer IV
Michelle Wright,
Administrative Support Assistant III

### Information Systems Services

Kay Oswalt,
IT Systems Specialist Senior
Debra Jackson,
IT Systems Technician

Karen Gaston,
Programmer /Analyst Associate

### Federal Affairs

Mary Newmeyer,
Public Utility Analyst Manager
Gene Hanes,
Public Utility Analyst Manager

### Personnel

Dorinda Kepler,
Personnel Assistant III
Rozetta Parker,
Administrative Support Assistant III

### Public Affairs

Clark Bruner,
Public Information Specialist
(Transferred 2/1/2008)

## Energy Division

Janice M. Hamilton,
Director
### Electricity Section
John Free, CPA
Public Utility Analyst Manager
Robert Taylor, III,
Public Utility Analyst III
Sheila Ward,
Public Utility Analyst II
Gregory Kelly,
Public Utility Technical Specialist, Senior
Linda Gardner,
Public Utility Analyst II
Patricia Smith,
Public Utility Analyst II
Jacqueline Frazier,
Administrative Support Assistant II
### Natural Gas Section
Robert Reed,
Public Utility Analyst Manager
Donald Powell,
Public Utility Analyst III

Joe Leverette,
Public Utility Analyst III
Tonya Williams,
Accountant
Brenda Roberts,
Administrative Support Assistant III
### Gas Pipeline Safety Section
Christopher J. Harvey,
Gas Pipeline Safety Administrator
(Retired 1/1/2008)
Wallace R. Jones Sr.,
Gas Pipeline Safety Administrator
Jannette Mitchell,
Clerk Stenographer III
Harold Dunson,
Pipeline Safety Investigations Supervisor
John Paul Harris,
Pipeline Safety Investigations Supervisor
Thomas Lancaster,
Pipeline Safety Investigations Supervisor
Spencer Brady,
Pipeline Safety Training Officer

Gregory Meadows,
Pipeline Safety Investigator, Senior
Judy Ramsey,
Pipeline Safety Investigator, Senior
Hosie Powell,
Pipeline Safety Investigator, Senior
David Snoddy,
Pipeline Safety Investigator, Senior
(Retired 1/1/2008)
Daniel Trapp,
Pipeline Safety Investigator
Clark Brown,
Pipeline Safety Investigator
### Special Projects Section
Rick Cleckler,
Public Utility Technical Specialist, Senior
### Water Section
Stephen Bartelt,
Utility Analyst Manager
Maverick D. Roberts,
Administrative Support Assistant II



PLAINTIFF'S EXHIBIT 1-4

7

# RATE RSE
# RATE STABILIZATION AND
# EQUALIZATION FACTOR



Alabama
Power

---

By orders of the Alabama Public Service Commission in Dockets #18117 and #18416.

Effective November 5, 2020 for application to January 2021 billings and thereafter.

---

| PAGE<br>1 of 4 | EFFECTIVE DATE<br>November 5, 2020 | REVISION<br>Eighth |
|---|---|---|

## AVAILABILITY

Same as the specific rate incorporating this Rate RSE by reference.

## APPLICABILITY

Applicable as an integral part of each rate schedule of the Company in which reference is made to this Rate RSE.

## EXPLANATORY STATEMENT

It is the purpose of Rate RSE to lessen the impact, frequency and size of retail rate increase requests by permitting the Company, through the operation of a filed and approved rate, to adjust its charges more readily to achieve the rate of return allowed it in the rate order of the Commission. By provisions in the rate, the charges are increased if projections for the upcoming year show that the designated rate of return range will not be met and are decreased if such projections show that the designated rate of return range will be exceeded. Other provisions limit the impact of any one adjustment (as well as the impact of any consecutive increases), and also test whether actual results exceeded the weighted equity return range.

## APPLICATION OF RATE RSE AND
## CALCULATION PROCEDURES

Monthly billings on and after January 2019 shall be adjusted (increased or decreased) by the application of a rate stabilization and equalization factor ("RSE Factor") in accordance with the procedure herein described.  By December 1, 2018, and by each December 1 thereafter, the Company's weighted return on projected average common equity, separated to retail electric service ("WRRCE"), shall be computed annually for the upcoming twelve-month period ending December 31 (such twelve-month period being the "rate year").  The WRRCE shall be computed on the basis of cost estimates and budgets prepared by the Company in the ordinary course of its business and in a manner consistent with the Uniform System of Accounts through the tabulations specified on Appendix B hereto.  If the resulting WRRCE is less than 5.75% or more than 6.15% (5.75% - 6.15% being "the weighted equity return range"), then monthly bills under the respective rate schedules subject to this Rate RSE shall be increased or decreased by amounts per kilowatt-hour necessary, in total, to restore the WRRCE to 5.98% (the "adjusting point" in the weighted equity return range) plus a possible performance-based adder of 0.07%.

The performance-based adder shall be added to the adjusting point if, at the time of the annual Rate RSE filing, the Company satisfies at least one of the following criteria: (i) an "A" credit rating

PLAINTIFF'S
EXHIBIT
1-5

# Q&A – PSC Changes to Alabama Power's Rate Formula

*On Aug. 13, 2013, the Alabama Public Service Commission tinkered with a formula it uses to calculate Alabama Power profits and ultimately customer rates, claiming falsely that doing so would lower bills. Residential and commercial customers in Alabama pay some of the highest electricity bills in the country, and Alabama Power is allowed by the PSC to earn some of the highest returns of any utility in the country. The end result of scrapping one formula and replacing it with an even more complex one, as the following Q&A describes, does little to fix this imbalance, which has plagued customers for years. In reality, this is simply an artful accounting trick that favors utility profitability and has dubious benefits for ratepayers.*

## How were Alabama Power's rates previously set?

By law, investors in regulated utilities are entitled to reasonable returns on their investment. Until the PSC scrapped its old approach, Alabama Power was allowed to charge customers rates that would give it a **Return on Equity,** or **ROE,** of 13-14.5%, a highly appealing rate for investors; first because rates regulated by utilities commissions are guaranteed, making them highly stable and secure; second, because the range allowed by the PSC was one of the most generous in the country. The industry average is closer to 10%.

> ### Return on Equity (ROE)
>
> There are various ways of calculating profitability, but one key measure, called **Return on Equity or ROE**, is used almost universally. **ROE** is determined by dividing profits (revenue after all costs, including taxes and interest, have been paid) by the amount of equity capital (stock ownership) in a company.
>
> As an example: If rates are set so that the profit earned by a utility is $10 million/year and investors have provided $100 million of equity capital, the **ROE** is 10%.

## How did the PSC alter Alabama Power's rate formula?

On Aug. 13, the PSC voted 2-1 to replace **ROE** with a new more complex rate formula, called **Weighted Cost of Equity. WCE** calculates a company's returns using the percentage of its assets held by stockholders vs. those held by creditors. This is called the **Equity Ratio**. The new system allows Alabama Power to earn a WCE between 5.75% and 6.21% (with a target of 5.98%). It also builds in a bonus of 0.07% if the company maintains an "A" credit rating.

> ### Weighted Cost of Equity (WCE)
>
> A far less common means of calculating profitability is through **Weighted Cost of Equity** or **WCE**, which is determined by multiplying **ROE** by a company's **EQUITY RATIO**, or the percent of assets owned by stockholders.
>
> ***For 2014, without bonus***
> $ROE = WCE\ (5.98\%) \div 44.07\%\ equity\ ratio = 13.57\%$
>
> ***For 2014, with bonus***
> $ROE = WCE\ (5.98\% + .07\%) \div 44.07\%\ equity\ ratio = 13.73\%$

## What does this mean for customers?

Alabama Power has already announced that the switch will not result in any immediate reduction in bills, exactly the opposite of what the two commissioners who voted for it promised.



**Figure 2: Returns on Equity Adjusted by Equity Ratios – Alabama Power Company vs. an Industry Comparison Group of 76 Other Utility Operating Companies[20]**

Percent

- Alabama Power
- 76 Utility Operating Companies

Data Source: Institute for Energy Economics and Financial Analysis

## What does this mean for company profits?

The WCE target of 5.98% for 2014 could very likely boost Alabama Power profits. Return on equity could rise to **13.73%**, a 3.1% increase from what it would have been under the previous formula (The target the PSC set for 2013 was **13.32%**). Even though that may seem an inconsequential increase, it would translate to added profits of $13 million-$21.3 million, depending on the bonus. Contrary to claims that the switch to WCE lowers returns, Alabama Power profits will remain substantially higher than the industry average (graph at right).

The change also removes one of the PSC's only direct means of oversight. ROE provided a direct cap on returns. Under WCE, Alabama Power can adjust returns and the equity ratio in a way that allows it to mask profits. Even if the utility lowers its ROE, it could make the same profit in dollars by increasing the equity ratio, without any benefit to customers.

PLAINTIFF'S EXHIBIT
1-6

# The Gayness and immutable weirdness of Troy King



## Former Alabama Attorney General Troy King's private business ventures appear as troubled as his time in public office.

*Yes, I have seen ProPublica's story. We all knew Troy King would get mixed up in something else. I won't be back in the office until coronavirus has subsided, murder hornets have returned to Japan, but if you must speak with someone immediately ...*

King once was Alabama's attorney general, and that bright point on his resume will always follow his name on the first reference in news stories, no matter how many years have passed since he lost that office. His attempts to return to public life — running again for attorney general and for Congress this year — all failed. But now it's King's private business ventures that are drawing him the most attention.

PLAINTIFF'S EXHIBIT

1-7

1



# SUSAN RUSS WALKER

**As an Eckerd student studying abroad in London, the Honorable Susan Russ Walker '77 remembers many formative experiences: encountering a new country and culture; immersion in Shakespeare and theatre; and, in a moment that would take on great significance, taking a field trip to the University of Oxford.**

"I remember traveling there by bus," she says. "The school became much more real to me." At that time, women were not allowed to participate in the Rhodes Scholarship program, the prestigious scholarship program that brought students from across the world to study at Oxford. But that restriction only deepened Susan's interest and determination. When the scholarship opened applications to women in 1977, she applied, and was elected among the class of 1978 Rhodes Scholars in the second class to have female scholars.

Susan, who was Eckerd's first (and to this day, only) Rhodes Scholar, started on a post-Eckerd path that would take her not only to Oxford but to Yale Law and eventually to the judicial bench. She now serves as a U.S. Magistrate Judge for the U.S. District Court for the Middle District of Alabama and as an Eckerd College Trustee. She looks back at her Eckerd education as foundational for her work today, due to more than the academic skills she gained.

1

**PLAINTIFF'S EXHIBIT**

1-8

**Alabama Public Service Commission**

# Electricity Policy



*From left: A'shia Rainey, Tanya Champion, John Free, Patricia Smith, Caleb Hicks and Jerry Delancey*

Accordingly, APC established a regulatory liability of $54.8 million for Rate RSE refunds, which were distributed to customers through bill credits issued in July 2022. See Rate ECR and NDR sections for additional details.

On December 1, 2021, APC filed the 2022 Information and Calculations required by Appendix B to Rate RSE and the Special Rules. Based on this filing, the projected WRRCE for the 12-months ending December 31, 2022, was 6.07%.

The staff in the Electricity Section examines APC's books and records monthly to determine the WRRCE for the current 12-month period. The staff also prepares a summary report of this information for presentation at each monthly Commission meeting. As of September 30, 2022, the re-projected WRRCE for the 12-month period ending December 31, 2022, was 6.95%.



**PLAINTIFF'S EXHIBIT**

1-9

2022 Annual Report

27

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GREGORY KELLY,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      CIVIL ACTION NO. 2:07CV610-WHA
                                        )
JOHN FREE, et al.,                      )
                                        )
            Defendants.                 )

## ORDER

Upon consideration of defendants' response to the order to show cause, it is

ORDERED that defendants' motion to recover costs (Doc. #27), as supplemented by

the response to the order to show cause, is hereby CONSTRUED as the defendants' bill of

costs. The Clerk is DIRECTED to docket it as such and to tax any costs deemed by the Clerk

to be allowable.

DONE, this 14th day of July, 2008.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE



PLAINTIFF'S
EXHIBIT

1-10

AO 133 (Rev. 03/08) Bill of Costs

# UNITED STATES DISTRICT COURT

for the

## MIDDLE DISTRICT OF ALABAMA - NORTHERN DIVISION

GREGORY KELLY,
                    Plaintiff,   )
                                 )
          v.                     )   Case No.: 2:07-cv-610-WHA
                                 )
JOHN FREE, et al.,               )

### Bill of Costs

Judgment having been entered in the above entitled action __May 23, 2008__ against __Gregory Kelly__ ,
                                                                Date

the Clerk is requested to tax the following as costs:

| | |
|---|---:|
| Fees of the Clerk .................................................. | $    0 |
| Fees for service of summons and subpoena ............................ | 0 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | 0 |
| Fees and disbursements for printing ................................. | 0 |
| Fees for witnesses (itemize on page two) ............................ | 0.00 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case ............. | 4,181.91 |
| Docket fees under 28 U.S.C. 1923 ................................... | |
| Costs as shown on Mandate of Court of Appeals ...................... | |
| Compensation of court-appointed experts ........................... | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 ..... | |
| Other costs (please itemize) ............ Deposition cost for ct. reporter | 2,770.88 |
| TOTAL | $6,952.79 XXXXX |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

### Declaration

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

☑ Electronic service by e-mail as set forth below and/or.

☐ Conventional service by first class mail, postage prepaid as set forth below.

s/ Attorney: _Chris W Ord_

Name of Attorney: _Olivia W. MARTIN_

For: ~~John Free~~ and the Alabama Public Service Commission   Date: 7/10/08
                              Name of Claiming Party

Costs are taxed in the amount of _____ 6,952.79 _____ and included in the judgment.

~~Debra P. Hackett~~                By: _____   7/11/08
Clerk of Court                          Deputy Clerk           Date

PLAINTIFF'S EXHIBIT

1-11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GREGORY KELLY,                                    )
                                                  )
                Plaintiff,                        )
                                                  )
v.                                                )        Civil Action No. 2:07-cv-610-WHA
                                                  )
JOHN FREE, individually and in his official       )
position as an employee of the Alabama Public     )
Service Commission; JANICE M. HAMILTON,           )
individually and in her official position as a    )
Division Director of the Alabama Public Service   )
Commission; and ALABAMA PUBLIC                    )
SERVICE COMMISSION, an agency of the              )
State of Alabama,                                 )

## DEFENDANTS' RESPONSE TO THE ORDER TO SHOW CAUSE

This case was assigned to the Utility Section, a part of the Civil Division of the Office of the Attorney General, on Wednesday, June 18, 2008 with the request that we file a motion to recover the amounts allowed in this court's order taxing costs against the Plaintiff. The Alabama Public Service Commission forwarded by email copies of legal bills stating the costs incurred during the time that defendants were represented by the law firm, Melton, Espy & Williams, P.C. These documents were sent at 4:54 p.m. on June 19, 2008. The Motion to Recover Costs was filed on Friday, June 20, 2008. This court entered an order to show cause on July 7, 2008.

This is not a typical case because the filing for recovery of costs is usually made by the attorneys who have defended the case and who have actually incurred the costs that are requested. In this case, the Utility Section of the Attorney General's Office had less than 24 hours to assemble the information necessary to make a filing on behalf of the defendants. The

PLAINTIFF'S
EXHIBIT
1-12

only information that we received were copies of the legal bills and, from those bills, we extracted the costs that were incurred during the litigation. These legal bills were submitted as an exhibit with the Motion to Recover Costs to substantiate and show the costs that were incurred incident to the litigation process. This information was submitted in its original form so that there would be no question that the costs were correct, reasonable, and necessarily incurred in the case.

The legal bills submitted as a part of Exhibit A contain Affidavits by Oakley Melton, the attorney responsible for representing the Alabama Public Service Commission in this litigation, stating that "the claims for payment herewith made against the State of Alabama Public Service Commission reflect actual services performed for the State of Alabama Public Service Commission and are in all respects, true, correct, and unpaid." This sworn statement by Oakley Melton may not mirror word for word the verified statement on the local Bill of Costs form, but we submit that it meets the requirements of Section 28 U.S.C. A. § 1924. There is a further Affidavit from the Secretary of the Alabama Public Service Commission stating that the legal bills we are submitting in this matter are true and correct copies and that all of the costs are shown correctly.

Local Rule 54.1(a) provides that requests for taxation of costs under Fed. R. Civ. P. 54(d) shall be filed with the Clerk within 30 days after entry of final judgment from which an appeal may be taken. Defendants' Motion to Recover Costs was filed within the 30 day period. Copies were timely served on opposing counsel as required by the local rule.

Neither 28 U.S.C.A. § 1924 nor Federal Rule of Civil Procedure 54(d) specify how an application for costs is to be substantiated. Local Rule 54.1(b) states that costs bill forms should be obtained from the Clerk's Office. We did not use the local form, but courts have held that the

2



PLAINTIFF'S
EXHIBIT

1-13

failure to use the local form does not prohibit the recovery of costs. See e.g., Women's Federal Savings and Loan, 108 F.R.D. 396, 398 (D. Nev. 1985).

Significantly, Local Rule 54.1(b) does not use mandatory language with respect to the use of the form. It states only that cost bill forms should be obtained. The term "should" does not require a mandatory construction and we do not believe that the term "should" in this context required use of the local form, particularly in the situation where counsel was substituted at the last minute and all of the costs were incurred by attorneys who did not represent the client in the recovery of costs. Courts have grappled with the term "should," and, in some contexts, it may be mandatory and others it may be permissive. See e.g., Marshall v. Anaconda Co., 596 F.2d 370, 375-777 (9th Cir. 1979) for a discussion of the ambiguity created by use of the term "should." In this case, costs should not be denied to defendants because the costs were submitted in a form other than the preferred local costs bill form.

On or about June 24, 2008 counsel for defendants discussed the issue of the form with Debra P. Hackett, Clerk of the Court. She expressed a preference for the local bill form and indicated that this could be filed by the original attorneys. A discussion was had with Ms. Hackett concerning the timeliness of any supplemental filing and we agreed that we would supplement the original filing, if requested. She expressed a preference for assigning the case to a magistrate for a report and recommendation.

To show why defendants are entitled to recover the costs of this litigation, we are submitting copies of the un-redacted legal bills, the identical costs previously submitted on the local bill form in the format preferred by the Clerk's Office, and an attorneys Affidavit



PLAINTIFF'S EXHIBIT
I- 14

3

supporting and supplementing the Affidavits contained within the legal bills previously submitted.

Respectfully submitted,

TROY KING (KIN047)
ATTORNEY GENERAL

By:_____ /s/ Olivia W. Martin_____
        OLIVIA W. MARTIN (MAR003)
        Assistant Attorney General

ADDRESS OF COUNSEL:

OLIVIA W. MARTIN
Assistant Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL  36130-0152
Telephone: (334) 242-7393
Fax: (334) 242-2433
E-mail: omartin@ago.state.al.us



PLAINTIFF'S
EXHIBIT

1-15

4

## CERTIFICATE OF SERVICE

I certify that on July 10, 2008, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

Jimmy Lee DeBardelaben – dgoollaw@aol.com

Oakley W. Melton, Jr. – omelton@mewlegal.com

/s/ *Olivia W. Martin*
OLIVIA W. MARTIN (MAR003)



5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GREGORY KELLY,                              )
                                           )
            Plaintiff,                      )
                                           )
v.                                          )        Civil Action No. 2:07-cv-610-WHA
                                           )
JOHN FREE, individually and in his official )
position as an employee of the Alabama Public )
Service Commission; JANICE M. HAMILTON, )
individually and in her official position as a )
Division Director of the Alabama Public Service )
Commission; and ALABAMA PUBLIC )
SERVICE COMMISSION, an agency of the )
State of Alabama,                          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Olivia Watts Martin who being known to me and being duly sworn, deposes and says on oath as follows:

My name is Olivia Watts Martin, and I am over nineteen (19) years of age. I hereby certify and affirm that I am the Assistant Attorney General, assigned by the Office of the Attorney General to manage and review the legal bills submitted by Melton, Espy & Williams, P.C. for the lawsuit of: Gregory Kelly v. Alabama Public Service Commission, United States District Court, Middle District of Alabama, Case #: 2:07-cv-610-WHA. My responsibilities include reviewing each bill to ensure that it is in compliance with the State of Alabama's laws, rules, regulations, and guidelines concerning litigation handled by attorneys who have been appointed by the Attorney General to represent other state agencies, including the Alabama Public Service Commission. I do not have any responsibility to direct the course of the litigation.

PLAINTIFF'S
EXHIBIT
1-17

During the course of this litigation, I reviewed each bill submitted by Oakley Melton prior to the bill being submitted for payment. I signed bills after they were approved by the appropriate officials within the Alabama Public Service Commission. Each bill contained an Affidavit by Mr. Oakley Melton stating that "claims for payment herewith made against the State of Alabama Public Service Commission reflect actual services performed for the State of Alabama Public Service Commission and are in all respects true, correct, and unpaid." Based upon the Affidavit of Mr. Oakley Melton and the approval of the Alabama Public Service Commission officials and my own review of the time sheets and listing of costs, I believe that the costs submitted in the bills are correct and have been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

Further Affiant Sayeth Not.

OLIVIA WATTS MARTIN (MAR003)
Assistant Attorney General

STATE OF ALABAMA        )
                        )
COUNTY OF MONTGOMERY    )

Sworn to and subscribed before me and under my hand and official seal this the 10th day of July, 2008.

Notary Public
My commission expires: January 18, 2012


PLAINTIFF'S EXHIBIT

2